```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/01/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                           :

TAISHA PENA,                               :

                       :

          Plaintiff,          :            21-cv-2239 (LJL)

         -v-                    :

                               :       ORDER GRANTING

METROPOLITAN WIRELESS ANANDPUR INC. et al, :    DEFAULT JUDGMENT

                               :

         Defendants.        :

                               :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Taisha Pena ("Plaintiff") was employed as a retail clerk and was assigned to work at each of five Metro PCS retail locations on an as-needed basis from February 3, 2020 to November 29, 2020. Plaintiff filed this action on March 15, 2021, bringing claims against defendants Metropolitan Wireless Anandpur Inc. ("Metro"), Metropolitan Wireless Anantpur Bronx Inc. ("Metro Bronx"), SAB Impex Inc. ("SAB Impex"), Namit Sahni ("Sahni"), Veeru Singh ("Singh"), and Talha Munir ("Munir") (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* Dkt. No. 1 ("Complaint" or "Compl."). Plaintiff seeks damages, including liquidated damages and statutory damages, in connection with her claims for unpaid overtime wages under FLSA and NYLL, unpaid spread-of-hours pay under NYLL, and violations of the wage-notice and wage-statements provisions of NYLL.

Defendants were served a copy of the summons and Complaint on March 18, 2021. Dkt. Nos. 7-12. After Plaintiff moved for certificates of default against all Defendants, the Clerk of Court entered the defaults on June 10, 2021. Dkt. Nos. 24-26, 29. Plaintiff moved for default judgment as to all Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure

on June 21, 2021.  Dkt. No. 30.  The same day, Plaintiff served upon Defendants the motion for default judgment and accompanying papers.  Dkt. No. 33.  Defendants have not responded or appeared in this case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (internal quotation marks and citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations.").  Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law."  *Finkel v.*

*Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party later challenging the entry of a default

judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure

55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any

meritorious defenses, and (3) prejudice to the non-defaulting party."  *Guggenheim Capital, LLC*

*v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar

plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing

inferences in the movant's favor."  *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5

(S.D.N.Y. Mar. 27, 2019).  A default judgment entered on well-pleaded allegations does not

reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages

with evidence to prove the extent of those damages."  *Hood v. Ascent Med. Corp.*, 2016 WL

1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL

3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment,

Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary

to the discretion of the district court."  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527

(S.D.N.Y. 2012).  And "[w]here, on a damages inquest, the plaintiff makes a damages

submission and the defaulting defendant makes no submission in opposition and does not request

a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its

submitted proofs."  *Id.*

## DISCUSSION

The Court finds, as a preliminary matter, that the well-pleaded allegations in the

Complaint satisfy the jurisdictional prerequisites of the relevant FLSA and NYLL provisions.

*See* 29 U.S.C. §§ 206(a), 207(a)(1); N.Y. Lab. Law §§ 2, 190 to 199-a; *see generally Marcelino*

*v. 374 Food, Inc.*, 2018 WL 1517205, at \*9-10 (S.D.N.Y. Mar. 27, 2018).

The Court further finds that these allegations substantiate Plaintiff's claimed violations of

the overtime provisions of the FLSA, *see* 29 U.S.C. §§ 207(a)(1), 255(a), and of the overtime,

spread-of-hours, wage notice, and wage statement provisions of the NYLL, *see* N.Y. Lab. Law

§§ 190 *et seq.*, 650 *et seq.*; *see also id.* § 195(1), (3).

Under the FLSA, the applicable statute of limitations is two years, although it can be

extended to three years upon a finding that the employer's violations were willful.  29 U.S.C.

§ 255(a).  The applicable limitations period for NYLL claims is six years.  N.Y. Lab. Law

§ 663(3).  Neither is a bar to Plaintiff's recovery as she filed this lawsuit on March 18, 2021 and

she worked for Defendants between February 2020 and November 2020.  More specifically,

Plaintiff worked for defendants Metro and Sahni from February 3, 2020 to August 1, 2020 and

for defendants Metro Bronx, SAB Impex, Singh, and Munir from August 1, 2020 to November

29, 2020.  Compl. ¶ 47.  On August 1, 2020, defendants Metro Bronx and SAB Impex (centrally

controlled and/or owned by defendants Singh and Munir) purchased from defendants Metro and

Sahni the five Metro PCS retail stores at which Plaintiff worked.  *Id.* ¶¶ 18, 23, 46, 48.

The Court has reviewed the materials submitted by Plaintiff and her counsel in

connection with the instant application and finds that those materials are adequate and that a

further inquest is unnecessary.  *See* Dkt. No. 32 (declaration of Keith E. Williams and exhibits,

including sworn statements from Plaintiff concerning her hours and pay).

## I.  Damages

### A.  Unpaid Wages

An employee who brings an action under the FLSA or the NYLL for unpaid wages must

prove that she performed the work and was not compensated properly for her time.  *See*

*Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003).  While the FLSA requires an

employer to "make, keep, and preserve" records of employee wages, hours, and employment

conditions, 29 U.S.C. § 211(c), "[w]hen an employer fails to maintain accurate and complete

records of the hours employees work and the amounts they are paid, the plaintiff-employee need

only . . . submit 'sufficient evidence from which violations of the [FLSA] and the amount of an

award may be reasonably inferred.'"  *Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL

3835960, at *16 (S.D.N.Y. July 27, 2017) (second alteration in original) (quoting *Reich v. S.

New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).  An employee discharges her

burden at this first step "if [she] can prove that [she] 'in fact performed work for which [s]he was

improperly compensated and if [s]he produces sufficient evidence to show the amount and extent

of that work as a matter of just and reasonable inference.'"  *Hernandez v. Jrpac Inc.*, 2016 WL

3248493, at *27 (S.D.N.Y. June 9, 2016) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 687-88 (1946)).  "This burden is 'not high' and may be met 'through estimates based

on [the employee's] own recollection.'"  *Id.* (alteration in original) (quoting *Kuebel v. Black &

Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)).

    If an employee makes this showing, "[t]he burden then shifts to the employer to come

forward [i] with evidence of the precise amount of work performed or [ii] with evidence to

negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.*

(first alteration in original) (quoting *Anderson*, 328 U.S. at 687-88).  "If the employer fails to

produce such evidence, the court may then award damages to the employee, even though the

result may be only approximate."  *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Anderson*, 328

U.S. at 688).

"A similar standard applies to unpaid compensation claims under [the] NYLL."

*Gonzalez*, 2017 WL 3835960, at *16; *see also Garcia v. JonJon Deli Grocery Corp.*, 2015 WL

4940107, at *4 n.8 (S.D.N.Y. Aug. 11, 2015) ("Courts use the same burden-shifting framework

[as in the FLSA] to determine liability for unpaid overtime under the NYLL.").  But under the

NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of

proof.  "NYLL § 196-a provides that where an employer fails to 'keep adequate records or

provide statements of wages to employees as required' by the statute, the employer 'shall bear

the burden of proving that the complaining employee was paid wages, benefits and wage

supplements.'"  *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31,

2017) (quoting N.Y. Lab. Law § 196-a(a)); *see also generally Gamero v. Koodo Sushi Corp.*,

272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017).  The NYLL thus requires a more demanding showing

from the employer than the FLSA, which permits an employer to discharge its burden merely by

undermining the reasonableness of an employee's evidence that he was underpaid.  *Cf. Jrpac*,

2016 WL 3248493, at *27.  In contrast, the NYLL requires that an employer demonstrate by a

preponderance of the evidence that it in fact paid its employees "wages, benefits and

supplements."  N.Y. Lab. Law § 196-a(a); *see also Jrpac*, 2016 WL 3248493, at *36.  And "[i]f

an employer cannot satisfy its burden under the FLSA, it cannot satisfy th[is] 'more demanding

burden' of the NYLL."  *Canelas*, 2017 WL 1233998, at *9 (quoting *Doo Nam Yang v. ACBL*

*Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)).

Where a plaintiff brings claims under both the FLSA and the NYLL, she "may not

receive a 'double recovery' of back wages under both the FLSA and [the] NYLL."  *Jrpac*, 2016

WL 3248493, at *31 (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 333 (1980));

*cf. Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the

NYLL and FLSA as not allowing duplicative liquidated damages for the same course of

conduct."). Because the NYLL prescribes a higher minimum wage than the FLSA, the Court

will focus its analysis on that statute.

Here, Defendants failed to defend against this action and did not provide Plaintiff with

pay records. Instead, Plaintiff has submitted a sworn statement attesting to the number of hours

she worked per day with her best estimates of the days of the week and hours worked. The Court

accepts these as best estimates and adequate proof. *See Teofilo v. Real Thai Cuisine Inc.*, 2021

WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021) (finding a further inquest on damages to be

unnecessary when provided with sworn statements from plaintiffs regarding their hours and pay).

From its review of the evidence, the Court concludes that Plaintiff is entitled to $2,111.98 in

overtime and $1,950 in spread-of-hours wages for a total of $4,061.98 in back wages from

defendants Metro and Sahni and is entitled to $1,380.91 in overtime and $930 in spread-of-hours

wages for a total of $2,310.91 in back wages from defendants Metro Bronx, SAB Impex, Singh,

and Munir.[1]

### B.    Liquidated Damages

Under the terms of the NYLL, N.Y. Lab. Law § 663, Plaintiff is also entitled to

liquidated damages "equal to one hundred percent of such underpayments found to be due," in

the absence of a defense showing of "a good faith basis to believe that its underpayment of

wages was in compliance with the law." *Rana*, 887 F.3d at 122-23. To present this defense, the

employer must demonstrate that it "took 'active steps to ascertain the dictates of the FLSA and

then act to comply with them.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150

---

[1] Plaintiff's request of $1,380.91 appears to underestimate the amount of overtimes wages due
from defendants Metro Bronx, SAB Impex, Singh, and Munir. But the Court will award only the
amount requested by Plaintiff.

(2d Cir. 2008) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).  The

employer must also show that its good-faith actions were objectively reasonable.  *RSR*, 172 F.3d

at 142-43.  Even where a defendant employer has appeared in the action, the Second Circuit has

observed that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages

[are] the norm and single damages the exception.'"  *Barfield*, 537 F.3d at 150 (quoting *RSR*, 172

F.3d at 142).  Defendants have not appeared in this action or presented such a defense.

Accordingly, Plaintiff is entitled to a liquidated damages award in the amount of 100% of back

wages.  Plaintiff is entitled to $4,061.98 in liquidated damages from defendants Metro and Sahni

and is entitled to $2,310.91 in liquidated damages from defendants Metro Bronx, SAB Impex,

Singh, and Munir.

      **C.**     **Statutory Damages**

      The NYLL also requires employers to provide, at the time of hiring, a wage notice to

employees hired after April 9, 2011, and to provide each employee with accurate wage

statements with every payment of wages.  *See* N.Y. Lab. Law § 195(1)(a), (3).  Under the NYLL,

employees are entitled to recover wage-notice statutory damages of $50 dollars "for each work

day that the violations occurred or continue to occur," not to exceed $5,000, *id.* § 198(1-b), and

are entitled to recover wage-statement statutory damages of $250 dollars "for each work day that

the violations occurred or continue to occur," not to exceed $5,000, *id.* § 198(1-d).  Plaintiff has

alleged and declared that she received no such notices either at the beginning or for the duration

of her employment, and the Court has no basis to doubt these claims.  Here, this means that

Plaintiff is entitled to $5,000 in wage-notice statutory damages and $5,000 in wage-statement

statutory damages from defendants Metro and Sahni and is entitled to $4,250 in wage-notice

statutory damages and $5,000 in wage-statement statutory damages from defendants Metro

Bronx, SAB Impex, Singh, and Munir.

### D.        Prejudgment Interest

Employees may recover prejudgment interest with respect to their back wages, but not

with respect to liquidated damages or violations of the wage statement or wage notice provisions.

N.Y. Lab. Law § 198(1-a); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557

(S.D.N.Y. 2017).  "New York law sets the relevant interest rate at nine percent per year."

*Ortega v. JR Primos 2 Rest. Corp.*, 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017) (citing

N.Y. C.P.L.R. § 5004).  And to determine when prejudgment interest begins to accrue, "[c]ourts

applying [the] NYLL in wage-and-hour cases 'often choose the midpoint of the plaintiff's

employment within the limitations period.'"  *Hengjin Sun v. China 1221, Inc.*, 2016 WL

1587242, at *6 (S.D.N.Y. Apr. 19, 2016) (quoting *Tackie v. Keff Enters. LLC*, 2014 WL

4626229, at *6 (S.D.N.Y. Sept. 16, 2014)).  The Court will award prejudgment interest in this

case, starting from the midpoint of Plaintiff's employment with each set of Defendants.

### E.        Judgment Unpaid Within 90 Days

The Court also holds that "if any amounts [of damages awarded under the NYLL] remain

unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after

expiration of the time to appeal and no appeal is then pending, whichever is later, the total

amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab. Law § 198(4).

## II.        Successor Liability

Plaintiff argues that, by virtue of their default, defendants Metro Bronx and SAB Impex

have admitted to successor liability for the violations of defendant Metro under the substantial

continuity test for successor liability.  Dkt. No. 31 at 22-23.  Accordingly, Plaintiff seeks to hold

defendants Metro Bronx, SAB Impex, Singh, and Munir liable for the violations of defendants

Metro and Sahni in addition to their own violations.  *Id.*

9

"Federal courts sitting in New York employ either a New York common law standard or a 'substantial continuity' test in determining whether a defendant may be held liable for a previous employer's labor law violations." *Moreno v. Ramos*, 2021 WL 637563, at *3 (S.D.N.Y. Feb. 17, 2021) (citing *Xue Ming Wang v. Abumi Sushi, Inc.*, 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017)).  Plaintiff here focuses solely on the "more liberal" substantial continuity test, *id.*, and does not argue that the New York common law standard applies.  *See* Dkt. No. 31 at 22-23; *see also Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) ("Unlike the traditional common law test, this [broader 'substantial continuity' test] does not require continuity of ownership between the two businesses . . . .").  Accordingly, any argument under the New York common law standard is waived.  *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived.") (citing *Pfizer, Inc. v. United States*, 2017 WL 4350581, at *2 (S.D.N.Y. June 30, 2017)).  "[T]his ends the analysis" with respect to Plaintiff's NYLL claims "as the Court is aware of no basis to apply the federal common-law doctrine" of the substantial continuity test "to claims arising under state law." *Xue Ming Wang*, 262 F. Supp. 3d at 88.  The Court, however, addresses the substantial continuity test for successor liability with respect to Plaintiff's FLSA claims.

"The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context." *Feng Chen v. Patel*, 2019 WL 2763836, at *4 (S.D.N.Y. July 2, 2019) (quoting *Bautista v. Beyond Thai Kitchen, Inc.*, 2015 WL 5459737, at *3 (S.D.N.Y. Sept. 17, 2015)).  "Several district courts in this Circuit have held that it applies to FLSA claims," *id.* (collecting cases).  This Court, however, need not resolve whether the substantial continuity test applies as Plaintiff has failed to establish successor liability even assuming it does apply.

"Courts applying substantial continuity generally cite a set of nine factors enunciated by the Sixth Circuit in the Title VII context:

> '(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.'

*Xue Ming Wang*, 262 F. Supp. 3d at 89 (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985), which cited to *E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)).  "As the test has been applied, however, courts have considered the first two factors—notice and the ability of the predecessor to provide relief—to be indispensable." *Id.*

Here, Plaintiff has failed to establish these two "indispensable" factors.  First, Plaintiff has not shown that successor defendants Metro Bronx and SAB Impex had notice of the charge or pending lawsuit prior to acquiring the business.  As the lawsuit was filed after the business was acquired, these defendants could not have had notice of it before acquiring the business. Regarding notice of the charge, however, Plaintiff argues that these defendants "were aware of [defendant Metro's] unlawful wage and hour practices, and they continued to maintain those same unlawful practices post-transaction without interruption."  Dkt. No. 31 at 23.  The allegation that a defendant continued an unlawful practice, however, does not itself make the defendant liable for the practice before it continued the practice.  The test references notice of the charge or pending lawsuit and not knowledge of the practice.  Moreover, the Complaint here does not include factual allegations to support that defendants Metro Bronx and SAB Impex had notice of such violations before acquiring the business.  Rather, the Complaint alleges: "*During*

11

*their respective periods of ownership*, Defendants were aware of Plaintiff's work hours but failed

to pay her the full amount of overtime compensation to which she was and is entitled for this

work time under the law." Compl. ¶ 89 (emphasis added). Read literally, the Complaint thus

alleges that only the predecessor defendant Metro had notice during its period of ownership and

that the successor defendants Metro Bronx and SAB Impex had notice during their period of

ownership. It does not allege that Metro Bronx and SAB Impex had notice prior to acquiring the

business. Finally, Plaintiff has provided no basis to doubt the ability of the predecessor

defendant Metro to provide relief. *See* Dkt. No. 31 at 23 (omitting this factor in arguing why

successor liability exists).

Therefore, Plaintiff has not established successor liability assuming the substantial

continuity test applies. Accordingly, Defendants Metro Bronx, SAB Impex, Singh, and Munir

will not be held additionally liable for the violations of defendants Metro and Sahni.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff is entitled to relief on

her claims for back wages (i.e., overtime and spread-of-hours wages), wage-notice violations,

and wage-statement violations. The Clerk of Court is respectfully directed to prepare a judgment

reflecting the Court's holding and setting forth Plaintiff's damages as follows.

As against defendants Metropolitan Wireless Anandpur Inc. and Namit Sahni, Plaintiff is

awarded:

- $4,061.98 in back wages under the NYLL, with 9% prejudgment interest accruing
  from May 2, 2020;

- $4,061.98 in liquidated damages;

- $5,000 in wage-notice statutory damages; and

- $5,000 in wage-statement statutory damages.

- "[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab. Law § 198(4).

- The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

As against defendants Metropolitan Wireless Anantpur Bronx Inc., SAB Impex Inc., Veeru Singh, and Talha Munir, Plaintiff is awarded:

- $2,310.91 in back wages under the NYLL, with 9% prejudgment interest accruing from September 30, 2020;

- $2,310.91 in liquidated damages;

- $4,250 in wage-notice statutory damages; and

- $5,000 in wage-statement statutory damages.

- "[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab. Law § 198(4).

- The Court also awards post-judgment interest pursuant to 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to close Dkt. No. 30 and to close the case.

The Court directs Plaintiff to transmit a copy of this Order to Defendants through any means they have previously used to communicate with Defendants.


SO ORDERED.

Dated: November 1, 2021
        New York, New York

LEWIS J. LIMAN
United States District Judge